IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LESLIE HOWELL and GRETCHEN HOWELL,<br><br>  Plaintiffs,<br><br>v.<br><br>ZIONS BANCORPORATION, N.A., and JOHN DOES OR JANE DOES 1-20,<br><br>  Defendants. | **ORDER AND MEMORANDUM DECISION**<br><br>Case No. 2:21-cv-00349-TC-DAO<br><br>District Judge Tena Campbell |

Before the court is Plaintiffs Leslie and Gretchen Howell's motion to remand (ECF No. 10), which followed Defendant Zions Bancorporation's notice of removal (ECF No. 5). The matter is fully briefed, and the court heard oral argument on September 17, 2021. (ECF No. 32.) For the following reasons, the court GRANTS the Howells' motion to remand.

## FACTS

This action arises out of the Rare Rust Coin Ponzi scheme. Mr. and Mrs. Howell were two of the alleged investors in the scheme (and likely were "net winners," meaning they earned more than they invested). Rust Rare Coin, Mr. Rust, and Mr. Rust's family maintained the Silver Pool Investment Accounts at Zions Bank. In May 2021, the Howells sued Zions Bank in the Third Judicial District Court for Salt Lake County, Utah, raising claims of (1) aiding and abetting fraud, (2) aiding and abetting breach of fiduciary duty, (3) aiding and abetting conversion, (4) breach of fiduciary duty, and (5) negligence. (Compl. (ECF No. 5-1).) However, there has been a separate, related class action pending before Judge Nielson for over two years: Gregory v. Zions Bancorporation, Case No. 2:19-cv-00015-HCN-DBP. Another group of investors filed a similar class action shortly after the Gregory plaintiffs did, and the court consolidated the

actions.  In August 2020, Judge Nielson granted in part Zions' motion to dismiss; the only surviving <u>Gregory</u> claim is the claim for aiding and abetting conversion.  Currently, the <u>Gregory</u> plaintiffs are trying to amend their complaint to revive some of the dismissed claims, but their motion is still undetermined.

The Howells' complaint against Zions is almost identical to the <u>Gregory</u> plaintiffs' complaint.  The Howells' attorney even admitted that he used the <u>Gregory</u> complaint as a "template" in order to cut down on costs.  (Pls.' Reply in Supp. at 7 n.3, ECF No. 19.)  However, the Howells argue that they are not members of the <u>Gregory</u> class[1] because they are net winners, rather than victims, of the Rust Rare Coin scheme.  In any event, Zions removed the <u>Howell</u> action to this court on June 4, 2021, claiming federal jurisdiction under the Class Action Fairness Act (CAFA).  (Notice of Removal, ECF No. 5.)  The Howells now seek to remand the case to state court on the grounds that the court does not have subject-matter jurisdiction.  (Mot. to Remand, ECF No. 10).

## ANALYSIS

### I.      CAFA Jurisdiction and Removal

28 U.S.C. §§ 1441 and 1453 permit a defendant to remove to federal district court any class action brought in state court, provided that the federal court has original jurisdiction over the case.  But if at any time before final judgment it appears that the district court lacks subject-matter jurisdiction, the case must be remanded.  28 U.S.C. § 1447(c).

Under CAFA, federal courts have original jurisdiction over (1) class actions (2) with 100 or more plaintiffs, (3) where any plaintiff is diverse from any defendant, and (4) where the

---

[1] "The proposed <u>Gregory</u> class is defined as "[a]ll persons and entities who invested in the Silver Pool scheme and who were damaged thereby."  (Amended Compl. ¶ 125, Case No. 2:19-cv-00015-HCN-DBP, ECF No. 69.)

2

amount in controversy exceeds $5,000,000.  28 U.S.C. § 1332(d)(2), (d)(5)(B).  A class action is "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  Id. § 1332(d)(1)(B).

When a case is removed based on CAFA, the removing party bears the burden of demonstrating by a preponderance of the evidence that the requirements of CAFA jurisdiction are met.  Plummer v. Farmers Grp., Inc., 388 F. Supp. 2d 1310 (E.D. Okla. 2005); see Frederick v. Hartford Underwriters Ins. Co., 683 F.3d 1242, 1246 (10th Cir. 2012).  Unlike diversity cases, there is no presumption against removal for CAFA cases.  Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 89 (2014).

It is almost certain that the Howells' lawsuit cannot qualify as a class action, as the suit was not filed as a class action under Utah state law, nor does it look anything like a class action.[2] There is likewise no question that the suit does not meet two of the requirements for CAFA jurisdiction.  While the parties are diverse, there are only 2 plaintiffs, not 100, and the amount in controversy is $300,000, not $5,000,000.  Still, Zions claims federal subject-matter jurisdiction under CAFA.  It reasons that because (1) there is already federal jurisdiction over the Gregory class action, (2) the Howells' complaint is nearly identical to the Gregory complaint, and (3) the

---

[2] The parties agree that the Tenth Circuit has not addressed what the definition of "class action" means.  (Pls.' Mot. to Remand at 7, ECF No. 10; Def.'s Opp'n to Remand at 9 n.15, ECF No. 13.)  For example, how similar to Rule 23 must the state statute be?  Regardless of the answer, the Howells' suit is not akin to a class action.  The suit's relatedness to an existing class action does not render the Howells' suit a class action.  It strains credulity that the Tenth Circuit would craft a ruling that sweeps the Howells' suit into the definition of a class action.  No other circuit has come close to that.  See Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 214 (2d Cir. 2013) ("While the statutory definition is, to some degree, circular, it is nonetheless unambiguous." (citation omitted)); West Virginia ex rel. McGraw v. CVS Pharmacy, Inc., 646 F.3d 169, 174 (4th Cir. 2011) ("While the statutory definition is, to some degree, circular, Congress undoubtedly intended to define 'class action' in terms of its similarity and close resemblance to Rule 23.").

Howells are members of the putative <u>Gregory</u> class, the federal court already has jurisdiction over the Howells' case.

There is already CAFA jurisdiction over the <u>Gregory</u> case, and the Howells have admitted to using a nearly identical complaint in the present suit.  But they allege that their status as "net winners" in the Rust Silver Pool scheme precludes them from membership in the <u>Gregory</u> class. This cannot be true.  The <u>Gregory</u> class is defined as "[a]ll persons and entities who invested in the Silver Pool scheme and who were damaged thereby."  (Amended Compl. ¶ 125, Case No. 2:19-cv-00015-HCN-DBP, ECF No. 69.)  The Howells have alleged that they invested in the Silver Pool scheme.  (Compl. ¶ 2, ECF No. 5-1.)  They have also alleged that they were "victims" of the Silver Pool scheme, which caused them to suffer damages, notwithstanding their status as net winners.  (<u>Id.</u> ¶ 179.)  Thus, assuming the truth of the facts in the complaint, the Howells are undoubtedly members of the broadly defined <u>Gregory</u> class, and their claims belong with those of the other <u>Gregory</u> plaintiffs.[3]

All of Zions' contentions—about the status of the <u>Gregory</u> suit, the Howells' copycat complaint, and the Howells' membership in the class—are correct.  However, these things do not give the court subject-matter jurisdiction over the Howells' lawsuit.  Nothing in CAFA allows a defendant to remove an otherwise-unremovable state-court suit that belongs with the main class action.  And while courts universally condemn the idea of filing separate suits as contrary to CAFA's purpose, they never go so far as to say that plaintiffs cannot do so.  To hold otherwise would contravene the maxim that "the plaintiff is the master of his complaint."  <u>Hansen v. Harper Excavating, Inc.</u>, 641 F.3d 1216, 1220 (10th Cir. 2011).

---

[3] At oral argument, the Howells' attorney told the court that the final <u>Gregory</u> class definition would not be known until the class is certified.  Ultimately, the court does not need to reach the issue of the Howells' class membership to decide this motion.

Partially because the Howells believe that they are outside of the <u>Gregory</u> class, and partially because the <u>Gregory</u> court has not notified class members of their opt-out rights, the Howells have not opted out of the class action.  The Tenth Circuit has held that "members of a putative class are treated as if they [are] parties to the action itself 'until and unless they receive[] notice thereof and cho[o]se not continue.'"  <u>State Farm Mut. Auto. Ins. Co. v. Boellstorff</u>, 540 F.3d 1223, 1229 (10th Cir. 2008) (quoting <u>Am. Pipe & Constr. Co. v. Utah</u>, 414 U.S. 538, 551 (1974)).  It is unclear whether filing a separate suit "constitutes an effective expression of [the Howells'] desire to exclude [themselves]," <u>In re Four Seasons Sec. L. Litig.</u>, 493 F.2d 1288, 1291 (10th Cir. 1974), but there are strong policy arguments that caution against holding that the Howells have impliedly opted out.  <u>See</u> <u>US W., Inc. v. Bus. Disc. Plan, Inc.</u>, 196 F.R.D. 576, 586 (D. Colo. 2000) (citing cases).[4]

Even if the Howells do not formally opt out, "a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified," <u>Standard Fire Ins. Co. v. Knowles</u>, 568 U.S. 588, 593 (2013), and here, the <u>Gregory</u> class has not yet been certified.  Because the Howells are in the proposed class, where the claims are being litigated and the statute of limitation remains tolled, there is no clear reason for them to file a separate suit in state court.  After all, "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may

---

[4] One of those reasons is to discourage a practice similar to (what used to be called) "one-way intervention," whereby absent class members could bide their time and then intervene once the class obtained a favorable decision, even though they would have been unaffected by an unfavorable decision.  From the case above:

> [A]llowing Plaintiffs' to opt out of the . . . class by virtue of their filing of this lawsuit would similarly offer a return to one-way intervention under a new guise. Indeed, potential class action members could then file their own independent lawsuits during the pendency of the class action, take no other action to opt-out of the class, and then either participate in the class if they are satisfied with the outcome, or opt-out after the fact and pursue their own lawsuits. Such an outcome would effectively eviscerate the purpose of class actions [ ] to avoid multiplicity of suits.

<u>US W.</u>, 196 F.R.D. at 586 (citations and internal quotation marks omitted).

choose to file their own suits or to intervene as plaintiffs in the pending action." Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 354 (1983). Justice Blackmun identified an important reason for tolling the statute of limitations:

> A putative class member who fears that class certification may be denied would have every incentive to file a separate action prior to the expiration of his own period of limitations. The result would be a needless multiplicity of actions— precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid.

Id. at 350–51. Nowhere does the Court say that plaintiffs are forbidden from filing separate actions, just that it would be "needless," given the tolling rule. As the Second Circuit reasoned,

> While reduction in the number of suits may be an incidental benefit of the *American Pipe* doctrine, it was not the purpose of *American Pipe* either to reduce the number of suits filed, or to force individual plaintiffs to make an early decision whether to proceed by individual suit or rely on a class representative. Nor was the purpose of *American Pipe* to protect the desire of a defendant not to defend against multiple actions in multiple forums. The *American Pipe* tolling doctrine was created to protect class members from being forced to file individual suits in order to preserve their claims. It was not meant to induce class members to forgo their right to sue individually.

In re WorldCom Sec. Litig., 496 F.3d 245, 256 (2d Cir. 2007) (citation and internal quotation marks omitted). The Tenth Circuit endorsed this view in State Farm, 540 F.3d at 1232. The State Farm court also believed that this rule would likely not have an adverse impact on district court dockets:

> [T]he group that would file individual suits during the window at issue here is likely to approximate in number the group that would later opt-out if a class is certified or file individual suits if not. The courts' case-load will likely remain the same; the only difference is when those cases show up on the dockets.

Id. at 1233.

If the Gregory action continues to settlement or judgment in favor of the plaintiffs, and the Howells fail to opt out, the Howells may be enjoined from continuing their suit or may be subject to a claim preclusion defense. See Weyerhaeuser Co. v. Wyatt, 505 F.3d 1104, 1109–10

(10th Cir. 2007) (holding that under the Anti-Injunction Act, a federal district court may enjoin a state court's adjudication of an issue that was "actually . . . decided by the federal court"); Cooper v. Fed. Rsrv. Bank of Richmond, 467 U.S. 867, 874 (1984) ("There is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation."). But in conclusion, there is no bar to the Howells' filing a separate suit this early in the class-action process.

To support its jurisdictional claim, Zions cites policy statements from the CAFA Senate Report. S. Rep. No. 109-14 (2005), as reprinted in 2005 U.S.C.C.A.N. 3. But as Seventh Circuit Judge Easterbrook wrote about the report,

> When a law sensibly could be read in multiple ways, legislative history may help a court understand which of these received the political branches' imprimatur. But when the legislative history stands by itself, as a naked expression of "intent" unconnected to any enacted text, it has no more force than an opinion poll of legislators—less, really, as it speaks for fewer. Thirteen Senators signed this report and five voted not to send the proposal to the floor. Another 82 Senators did not express themselves on the question; likewise 435 Members of the House and one President kept their silence.

Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir. 2005). And as the Second Circuit held, "[T]he Senate report was issued ten days after the enactment of the CAFA statute, which suggests that its probative value for divining legislative intent is minimal." Blockbuster, Inc. v. Galeno, 472 F.3d 53, 58 (2d Cir. 2006). The First Circuit concurs with this view. Coll. of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co., 585 F.3d 33, 38 n.2 (1st Cir. 2009). Although the Tenth Circuit has cited a different section of the Senate Report as persuasive, that brief mention was part of nonbinding dicta. See Parson v. Johnson & Johnson, 749 F.3d 879, 889–90 (10th Cir. 2014) (prefacing the section by saying that "[a]lthough the application of CAFA's plain language is sufficient for us to affirm the district court here"). The court is not persuaded by this report, which has no bearing on CAFA's plain text.

7

In its surreply, Zions asserts a new basis for jurisdiction: supplemental jurisdiction under 28 U.S.C. § 1367(a).  (Def.'s Surreply in Opp'n at 2, ECF No. 26.)  While a court should typically ignore any arguments raised for the first time in a reply memorandum, jurisdictional arguments are unique and may always be considered.  See 3Form Holdings, Inc. v. Livinglass, Inc., No. 2:05CV00641 DS, 2006 WL 278454, at *1 (D. Utah Feb. 2, 2006).  This is the reason the court allowed both sides to file an extra response.[5]  The parties dispute whether Mrs. Howell was actually a "net loser" and whether this means the court has CAFA jurisdiction over her claim and supplemental jurisdiction over Mr. Howell's "net winner" claim.  However, Zions' argument for supplemental jurisdiction, like its argument for diversity jurisdiction,[6] is premised on there being CAFA jurisdiction in the first place.  As previously stated, there is no CAFA jurisdiction here, so supplemental jurisdiction is unavailable.

## II.     Plaintiffs' Costs and Attorneys' Fees

The Howells ask the court to award them the costs, expenses, and attorneys' fees incurred in opposing the removal.  (Pls.' Mot. to Remand at 1 n.1, ECF No. 10.)  The removal statute empowers courts to do this, 28 U.S.C. § 1447(c), but "only where the removing party lacked an objectively reasonable basis for seeking removal."  Martin v. Franklin Cap. Corp., 546 U.S. 132, 141 (2005).  Ultimately, this is a matter of discretion, and the court's decision should be "'faithful to the purposes' of awarding fees under § 1447(c)," that is, balancing "the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the

---

[5] The Howells had notice of Zions' argument and an opportunity to brief the issue in a sur-sureply, so in considering the issue there is no unfairness to either side.  (Pls.' Sur-Surreply in Supp., ECF No. 31.)

[6] While the court would have had diversity jurisdiction over this case had the Howells initially filed in federal court, the "home defendant exception" to the diversity rule precludes removal by an in-state defendant when the case is "removable solely on the basis of" diversity jurisdiction.  28 U.S.C. § 1441(b).  Zions briefly argues at the end of its opposition that the exception does not apply here because the court has CAFA jurisdiction; the case would therefore not be removable "solely" under the diversity statute.  (Def.'s Opp'n at 14, ECF No. 13.)  Because the court does not have CAFA jurisdiction, this argument is meritless.

opposing party" with "Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." Id. at 140–41. Zions' extratextual argument for CAFA jurisdiction does not hold water, and it is a close question whether the removal was even "objectively reasonable." However, the court finds that Zions' removal was neither intended to prolong the litigation nor impose costs on the Howells. Had the court accepted federal jurisdiction here, it would have transferred the case to Judge Nielson for coordination (not consolidation) with the main Gregory class action. Such a result would have promoted judicial economy and lowered overall litigation costs for Zions and the Howells. Therefore, because Zions had a good-faith reason for removal (i.e., CAFA jurisdiction over the main Gregory class action), and because Zions sought to promote judicial economy by removing the case, the court declines to award the Howells their costs and fees.

Accordingly,

**IT IS ORDERED** that the Howells' motion to remand is GRANTED. The court directs the Clerk of the Court to remand this case to the Third Judicial District Court for Salt Lake County, Utah.

DATED this 21st day of September, 2021.

BY THE COURT:

TENA CAMPBELL
U.S. District Judge

9